[No. 19434.   Department Two.   December 22, 1925.]

NORTH PACIFIC SEA PRODUCTS COMPANY, *Respondent*, v. NIEDER *et al.*, *Appellants.*[1]

[1] ADMIRALTY (1)—JURISDICTION IN GENERAL—SUITS IN PERSONAM. An action for breach of contract for the removal of a vessel, being *in personam*, is not within the exclusive jurisdiction of the Federal courts, remedies which the common law is competent to give being expressly reserved by the Federal judiciary act.

[2] CONTRACTS (20, 21)—CONSIDERATION—NATURE AND ELEMENTS—BENEFIT TO PROMISOR AND DETRIMENT TO PROMISEE. The plaintiff is not a mere volunteer in removing a vessel lying along side its dock and an obstruction to navigation and a detriment to him, upon defendant's breach of his contract to remove the vessel, under a contract which was to the latter's advantage.

[3] TENDER (2)—WAIVER OF TENDER. One who breaches his contract to remove a vessel on the theory that he has a right to rescind for fraud cannot claim that the other party had no right to remove or destroy it, salvaging what could be saved to mitigate the damages, without any tender of the vessel.

[4] APPEAL (418)—REVIEW—FINDINGS. Findings will not be disturbed where it cannot be said that the evidence does not preponderate in support of the findings.

[5] NEW TRIAL (37)—TRIAL (32)—OPENING CASE FOR NEWLY DISCOVERED EVIDENCE—CUMULATIVE EVIDENCE—DISCRETION. A mo-

[1]Reported in 241 Pac. 682.

tion to reopen a case for further evidence and for a new trial, on the ground of newly discovered evidence, is properly overruled where the evidence was merely cumulative and not shown to be newly discovered.

Appeal from a judgment of the superior court for King county, Paul, J., entered March 30, 1925, upon findings in favor of the plaintiff, in an action for breach of contract, tried to the court. Affirmed.

*Vince H. Faben,* for appellants.

*Bronson, Robinson & Jones,* for respondent.

PARKER, J.—The plaintiff, North Pacific Sea Products Co., a corporation, seeks recovery of damages from the defendants, Nieder & Marcus, copartners, for an alleged breach of a contract entered into between them by which the defendants purchased from the plaintiff a certain partially burned vessel, and, as a part of the purchase consideration, agreed to remove the vessel from alongside the plaintiff's wharf at Belleview on the shore of Lake Washington, in King county. The plaintiff's claim of damages is rested upon the defendants' refusal to remove the vessel as agreed by them, the plaintiff's right under the sale contract to have the vessel removed, and the expense of such removal incurred by the plaintiff. A trial upon the merits in the superior court for King county resulted in findings and judgment awarding to the plaintiff recovery as prayed for, from which the defendants have appealed to this court.

On April 9, 1923, and for a long period prior thereto, the plaintiff owned the vessel in question. It was an old sailing vessel of about eleven hundred tons capacity, about two hundred feet long, and was named "Fresno." It was evidently out of commission as a carrier by its own power, but had some use as a barge. In the

fall of 1922, it had been laid up along the northerly side of a wharf belonging to the plaintiff at Belleview, on the shore of Lake Washington, in King county. Its bow had been run up towards the shore as far as possible, aided by steam winches, so that its bow was imbedded to a considerable extent in the soft mud of the bottom within forty or fifty feet of the shore water line, and was held securely in that position, though its extreme stern was probably not resting on the bottom.

The vessel rested in this position until April 4, 1923, when it was gutted by fire, which also burned a number of holes through its sides above the water line. It was thereby so damaged as to destroy its value as a carrier barge, though its non-inflammable equipment, which had fallen into the hold, was of some value as junk. On April 6, 1923, one of the defendants examined the remaining portions of the vessel and its equipment, with a view of purchasing the same as junk, they being then generally engaged in purchasing and salvaging old or wrecked vessels and their equipment. No agreement of purchase of the vessel was entered into on that day, though some negotiations were then had looking to such purchase by the defendants from the plaintiff. On April 9, 1923, without further examination of the vessel by the defendants, they, evidently assuming that its condition remained unchanged, not having seen it since April 6th, accepted a bill of sale therefor from the plaintiff, reading as follows:

"Seattle, Washington, April 9th, 1923.
"In consideration of One Dollar ($1.00), receipt whereof is hereby acknowledged, the undersigned hereby sells and conveys to Nieder & Marcus the Barge 'Fresno,' her apparel, tackle, and appurtenances as she now lies alongside the dock at Belleview, Wash. It is agreed that as a further consideration the undersigned purchasers, Nieder & Marcus, will entirely and

completely remove the said 'Fresno' from Meyden-bauer Bay within Thirty Days from this date.

> "North Pacific Sea Products Co.
> "By Wm. Schupp, President.
> "Nieder & Marcus,
> "By M. Nieder."

Soon thereafter, the defendants sought to rescind this purchase contract, upon the ground that the vessel was fully afloat in the water when they examined it on April 6th, that it had sunk about April 8th, rendering it entirely worthless, which fact was unknown to them when they entered into the sale contract on April 9th; and that the plaintiff, then knowing of such sinking, had fraudulently concealed that fact from the defendants, and that the defendants were thus induced to enter into the sale contract on April 9th. The plaintiff refused this rescission demand; and, upon the expiration of the thirty-day period for the removal of the vessel by the defendants, as provided in the contract, demanded that they remove the vessel. This demand being refused, and the defendants persisting in their claimed right of rescission and denying all obligation on their part to remove the vessel, the plaintiff, during the fall of 1923, removed it, salvaging its equipment, selling such portions thereof as had any value, and, giving the defendants full credit for the amount received therefor, charged the balance of the expense of removal to the defendants; such balance being the sum of $2,463.16, for which the trial court awarded judgment as the measure of plaintiff's damage by reason of the defendants' breach of the contract in failing to remove the vessel.

[1] Contention is made in behalf of the defendants that the sale contract here in question is purely maritime, and, therefore, this controversy is one of exclusive admiralty jurisdiction in the federal courts. Whatever may be said in support of the view that this is a mari-

time contract touching contractual rights and obligations subject to adjudication in the Federal admiralty courts, such jurisdiction, in any event, is not exclusive in those courts; since the relief here sought is purely *in personam* and, therefore, is a remedy which "the common law is competent to give;" such remedy being saved to suitors by the express provisions of the Federal judiciary act defining admiralty jurisdiction in the federal courts. Section 785, Barnes Federal Code of 1919; 1 R. C. L. 408; 1 C. J. 1253.

[2] Contention is made in behalf of defendants, in substance, that the plaintiff was a mere volunteer in assuming to remove the vessel. The argument seems to proceed upon the theory that the plaintiff had no obligation to remove the vessel as an obstruction to navigation. If the facts before us called for the conclusion that the plaintiff had no special interest in the removal of the vessel as an obstruction to navigation, different from the interest of the public, this contention might be worthy of serious consideration. But that is not this case. The fact is the vessel was lying alongside of the plaintiff's wharf. It was in plaintiff's way. Plaintiff's right to have the vessel removed thus differed from the general right of the public to have obstructions to navigation removed. The plaintiff's prime motive was to get rid of the vessel, and the sale contract was on its part wholly for that purpose. The plaintiff manifestly had a right to contract to that end; and the defendants manifestly also had the right and the power to contract to that end, and to assume that obligation in consideration of acquiring the vessel and its equipment as junk. We think that the plaintiff was not a mere volunteer in the sense that it had no special interest in the removal of the vessel.

[3] Some contention is made in behalf of the defendants seemingly rested upon the assumption that

the plaintiff in no event had the right to remove and destroy the vessel, which it did, salvaging such equipment as had value as junk. The argument seems to be that, when the hull was floated by the plaintiff, it should have been tendered to the defendants. But we think it is plain from the record that the defendants are not in a position to take advantage of any such want of tender. They had repudiated the contract upon the theory that they were entitled to rescind, and their whole attitude in the case, from beginning to end, renders it plain that any tender would have been refused by them.

[4] Some contention is made in this connection, also, that the plaintiff incurred an unnecessary amount of expense in salvaging and destroying the vessel, the hull being sunk by the plaintiff in two hundred feet of water out in the lake by sufficiently loading it down with gravel. A reading of the evidence fully convinces us, as it manifestly did the trial court, that the plaintiff disposed of the vessel in the most efficient and economical way safely open to it. The salvaging was fairly done and a fair sale made thereof. The hull had to be destroyed, and the evidence warrants the conclusion that that could not have been done in any more economical or efficient way than it was done.

Upon the merits of the defendants' affirmative defense of fraud inducing them to enter into the sale contract on April 9th, the trial court found:

"That no representations were made by the plaintiff to the defendants for the purpose of inducing the defendants to enter into such agreement, as alleged in defendants' affirmative defense, or at all.

"That on the 9th day of April, 1923, at the time of execution of said agreement, the said barge was in substantially the same situation and condition as when inspected by the defendants on the 6th day of April."

We have painstakingly read all of the evidence brought here in the statement of facts. The testimony is in serious conflict touching the question as to whether or not the vessel rested at the plaintiff's wharf on April 9th in a materially different situation than it did on April 6th, when one of the defendants examined it. We cannot say that the evidence touching the question of fact does not preponderate in support of these findings.

[5]   Contention is finally made that the trial court erred to the prejudice of the defendants in overruling their motion to open the case for the taking of further testimony on the question of the fraud defense, before the making of the findings and rendering of the judgment; and, also, in denying their motion for a new trial timely made thereafter. Both of these motions were rested upon alleged newly discovered evidence. The motion to open the case for further testimony was made some twenty days after the court had announced its decision in favor of the plaintiff at the conclusion of the trial, when both sides had rested. The affidavits filed in support of the motion for opening the case, which affidavits were also the only evidence relied upon by counsel for the defendants in support of their motion for a new trial, present practically no showing that the evidence so sought to be introduced was newly discovered; and besides, such proffered evidence is merely cumulative in support of the defendants' affirmative fraud defense. We think the trial court did not abuse its discretion in refusing to open the case for further hearing before final judgment was rendered, nor in denying the motion for a new trial thereafter made.

The judgment is affirmed.

TOLMAN, C. J., MACKINTOSH, MAIN, and MITCHELL, JJ., concur.